Our last case for argument today is Fiddler v. Bondi. Okay, Ms. Green, whenever you're ready. Good morning, your honors. I may please the court. Ileana Green, I was pro bono counsel for petitioner David Fiddler, and I'd like to reserve three minutes of my time for rebuttal. Mr. Fiddler, a lawful permanent resident, suffers from schizophrenia. Despite concluding that there is pervasive evidence of stigma against mentally ill individuals in Jamaica that routinely results in violence, this agency denied him relief under the Convention Against Torture. In doing so, the agency made four critical errors. First, the board disregarded this court's remand order and declined to address whether Jamaican police officers who target and shoot mentally ill individuals Let's talk just a minute about that remand order. We didn't specify any particular questions that had to be resolved, right? That's correct, your honor. It was the board that had suggested it. Yes, which I think is even more important. So they got a remand and then they thought better of it, apparently. Well, so this court granted the unopposed motion to remand, which specifically teed up the three questions for the board, and then I would point you to the board at AR3, specifically indicated that the remand was for it to address those three questions, and then went on inexplicably to completely ignore our arguments on prescribed purpose. Well, it didn't. Hold on. That's an overstatement, I think, because the board says we therefore affirm the immigration judge's determination to respond and did not show that the Jamaican police had a specific intent to torture mentally ill individuals, and then they cite to the immigration judge's long discussion of that very topic on pages 10 through 12. I actually think they should have cited 9 through 12, but they cited 10 through 12. So they didn't ignore it, right? I mean, they may not have done well enough for you, but they didn't ignore it. Well, I would respectfully disagree with that, your honor. The board seemed to rubber stamp the IJ's misunderstanding of the difference between specific intent and prescribed purpose. All right, so let's talk about the IJ's opinion. Where does the IJ indicate a misunderstanding of the prescribed purpose element? Well, I would say that the IJ's opinion doesn't reach prescribed purpose at all because it— It doesn't. I mean, it's prescribed purpose all over the place. Even if such a risk exists, the respondent has not established that the Jamaican police shoot and kill or otherwise harm mentally ill individuals with the specific intent to inflict him for a prescribed purpose. I mean, I can read on and on, but that's just going to take up your time. The IJ clearly talks about prescribed purpose, unless we just read it right out of the record. No, I'm not suggesting that at all, but the IJ does not— The IJ talks about the fact that there's pervasive stigma against mentally ill individuals in Jamaican society and then goes on to read into the specific intent requirement—  —that the lack of resources and poor training somehow caution against finding that there was a specific intent to cause harm. No doubt. Now, getting that in and of itself is reading in prescribed purpose into specific intent. As we've argued here, specific intent really goes to the actus reus and the mens rea of the action and the actor. And once the actor understands that the natural and probable consequences of the action are to cause harm, that suffices for specific intent. When we talk about prescribed purpose, that gets to the purpose behind the action itself, the reason for it, where the IJ found that the purpose here was the pervasive stigma against mentally ill individuals in Jamaican society. We're talking into what I think is another kind of crucial question in this area. What are we reviewing here? Are we reviewing a decision of the board or a decision of the IJ supplemented by the board? And I think this is important in terms of the chain reissue in the case. Sure, Your Honor. So I would say that you're reviewing the issue of the board's decision, but insofar as the board supplements the IJ's reasoning, that the IJ's decision is also before you on review. And did that happen here? Our position is no, that did not happen here, Your Honor. And it's just the board, so we're looking just at the board. Agreed. Yes. Correct. I think it is the board purports to make no analysis as to prescribed purpose, and neither does the government even try to save them by suggesting that it did so. Rather, the government seems to suggest that the specific intent finding was dispositive here, which I don't see the board's decision saying either. And I would point this court to Chenery, which is to say that I don't think that it's a sufficient basis to rely on the board's attempt to sort of wholesale cite to the IJ's decision to absolve itself of the need for reasoned decision making in this case. What should the board have done here? What could the board have done differently or done better to satisfy the standard of review in the United States Court of Appeals? The board could have looked to our fully briefed arguments on prescribed purpose that take into account, as well, evidence that the board and both the IJ discounted below, not just the – Wait a minute. That's not – de novo review is not our role. Clearly, the board and the IJ discounted your arguments below. For instance, you cite cases to the IJ that the IJ says, look, in these instances, the police did not seek out or target individuals with mental illness for harm. We don't review that de novo. I agree with that, Your Honor, but, Wilkinson v. Garland, I would point you to the fact that the misapplication of facts to law is a legal question here, and that's what we're arguing happened in this case, that the board, in reasoning through the specific intent standard, got the standard wrong. We think that the IJ has made the sufficient predicate factual findings here, particularly as to Mr. Fidler, given his status as a criminal deportee, given the fact that he's likely to end up homeless, given his lack of family connections and job prospects on the island, that we know that because of that, he's also likely to end up unmedicated due to the very high standard for accessing medical care. And we know from his history that when unmedicated, he has a history of oppositional and deviant behavior. And so all of those factors taken together point to the fact that more likely than not, Mr. Fidler is going to end up in front of the police, that there's going to be a violent confrontation, and that the police, when they do enact that violence, will specifically have intended to do— Where in your brief do you argue for de novo review? We argue for de novo review all over our brief, Your Honor, insofar as— Where? Where do you say this is a legal matter? What I'm reading is it's conclusions about specific intent.